1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10
| | |
|---|---|
| JENNA LLOYD, *et al.*, | Case No. 17-cv-1280-BAS-RBB |
| Plaintiffs, | **ORDER:** |
| | **(1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS;** |
| v. | |
| NAVY FEDERAL CREDIT UNION, | **(2) PRELIMINARILY APPROVING PROPOSED SETTLEMENT;** |
| Defendant. | **(3) APPROVING NOTICE TO CLASS SUBJECT TO CONDITIONS;** |
| | **AND** |
| | **(4) SETTING FINAL APPROVAL HEARING DATE** |
| | **[ECF No. 51]** |

23          Before the Court is Plaintiffs Jenna Lloyd and Jamie Plemon's unopposed

24   motion for preliminary approval of the class action Settlement Agreement

25   ("Agreement") between Plaintiffs and Defendant Navy Federal Credit Union ("Navy

26   Federal").[1]  For the reasons herein, the Court grants the motion.

27   _____

28          [1] The Court incorporates the Agreement's definitions in this Order.  Capitalized
terms have the meaning ascribed to them in the Agreement.

**RELEVANT BACKGROUND**

Plaintiffs commenced this case in June 2017.  (ECF No. 1.)  On August 22, 2017, Plaintiffs filed a First Amended Complaint ("FAC") largely identical to the original complaint, alleging that Navy Federal improperly assessed and collected Optional Overdraft Protection Fees ("OOPS Fees") from Plaintiffs and a putative class of Navy Federal accountholders on certain debit card transactions.  (ECF No. 4.)  Specifically, Plaintiffs alleged that pursuant to its account agreements with accountholders, Navy Federal was not permitted to charge OOPS Fees on debit card transactions that were authorized on an account with positive funds to cover the transaction but settled into a negative account balance.  For this alleged improper practice, Plaintiffs asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion and unjust enrichment on behalf a national putative class and, on behalf of a California sub-class, Plaintiffs asserted claims pursuant to the fraudulent prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.  Navy Federal moved to dismiss the FAC in September 2017.  (ECF No. 9.)

On April 12, 2018, this Court granted in part and denied in part Navy Federal's motion to dismiss the FAC in an order which extensively analyzed the initial set of claims Plaintiffs raised.  (ECF No. 33.)  The Court determined that Virginia law applies to the common law claims pursuant to a contractual choice of law provision in Navy Federal's agreements with accountholders.  (*Id.*)  The Court denied Navy Federal's motion insofar as it concerned Plaintiffs' breach of contract and conversion claims, but otherwise granted Navy Federal's motion.  The Court dismissed with prejudice Plaintiffs' unjust enrichment and CLRA claims and dismissed without prejudice Plaintiffs' UCL fraudulent prong and breach of the implied covenant claims, with the latter to be pleaded as a part of a breach of contract claim in the event Plaintiffs sought to amend the pleadings.  (*Id.*)

1    Plaintiffs filed the Second Amended Complaint ("SAC") on May 4, 2018,

2  alleging solely a breach of contract claim, which incorporated a breach of the implied

3  covenant of good faith and fair dealing, and conversion. (ECF No. 38.) Navy Federal

4  answered the SAC and the Parties engaged in informal settlement discussions,

5  including through a private mediation before the Honorable Walter Kelley Jr. (ECF

6  Nos. 39, 41, 45.) On September 25, 2018, the Parties filed a notice of settlement,

7  indicating that they had agreed to settle the case and that Plaintiffs would seek

8  preliminary approval of the anticipated settlement agreement. (ECF No. 48.)

9  Plaintiffs filed the present, unopposed motion for preliminary approval in the wake

10  of the Parties' agreed-upon settlement. (ECF No. 51.)

**PROPOSED SETTLEMENT**

12    The Parties have agreed to settle this Action as set forth in the Settlement

13  Agreement provided to the Court as Exhibit A to the present motion. (ECF No. 51-

14  2 Ex. A.) As part of their agreement, the Parties seek certification of a Settlement

15  Class defined as:

> All current and former Navy Federal members who were charged an OOPS
> Fee on a transaction that was authorized into a positive available balance
> during the Class Period, excluding individuals who enrolled in OOPS for the
> first time after February 13, 2017.

19    The Settlement provides for Navy's Federal's commitment to establish a

20  Settlement Fund of $24,500,000.00 for the benefit of Settlement Class members, as

21  well as Navy Federal's separate commitment to pay up to $500,000.00 toward

22  Settlement Administration Costs. (Agreement at ¶¶ 29, 55.) The Settlement Fund

23  will be used to: (a) pay Settlement Class Members their respective Settlement Class

24  Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and

25  litigation expenses and costs; (c) any Court awarded Service Awards for the Class

26  Representatives; (d) Settlement Administration Costs above the Navy Federal

27  Settlement Administration Costs Cap; and (e) in the event funds remain after the

28  initial distribution to Settlement Class Members, reimburse Navy Federal up to its

cap. (*Id.*)[2]

Settlement Class members do not have to submit claims or take any other affirmative step to receive relief under the Settlement or to receive a Settlement Class Member Payment. Instead, within 30 days following the Effective Date of the Settlement, Navy Federal and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. (*Id.* at ¶ 73.)

Payments to Settlement Class Members who are Current Account Holders will be made by Navy Federal crediting such Settlement Class Members' Accounts, and notifying them of the credit, or by checks mailed by the Settlement Administrator. (*Id.* at ¶ 81.) Past Account Holders will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. (*Id.* at ¶ 74.) Any uncashed or returned checks will remain in the Settlement Fund, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments. (*Id.* at ¶ 82.)

All Settlement Class Members who are entitled to a Settlement Class Member Payment will receive a *pro rata* distribution from the Net Settlement Fund based on the number of Relevant Overdraft Fees the Settlement Class Member paid or was assessed during the Class Period. (*Id.* at ¶ 76.) Because each Settlement Class Member's distribution amount is dependent on his or her specific Account activity and the number of Settlement Class Members, it is not possible to determine the likely recovery of each Settlement Class Member until this calculation is performed, but the Court has been made aware that such calculations will be performed as part of the Notice Program.

In the event funds remain in the Settlement Fund after the initial distribution

---

[2] The Settlement contemplates that a request will be made for a $5,000.00 Service Award for each of the Plaintiffs. (*Id.* at ¶ 93.) It also provides that Class Counsel is entitled to request, and Navy Federal will not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action. (*Id.* at ¶ 89.)

to Settlement Class Members, Navy Federal shall be reimbursed for the Settlement Administration Costs it paid. Thereafter, if funds remain, to the extent feasible, those funds shall be distributed in a second distribution to those Settlement Class Members that were paid or credited with a Settlement Class Member Payment in the first distribution. All Settlement Administration Costs of a second distribution will be paid out of the Settlement Fund, including those related to Navy Federal's facilitation of Account credits in the event of a second distribution. If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient or recipients, proposed by the Parties and to be approved by the Court, that work to promote financial literacy, including for members of the military or veterans. (*Id*. at ¶ 83.) The parties propose that Epiq Class Action & Claims Solutions, Inc. ("Epiq") be appointed Settlement Administrator, whose duties are specified therein, most notably at this preliminary approval stage to oversee the Notice Program. (*Id*. at ¶¶ 48, 59.)

The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Postcard Notice") to all Settlement Class members who do not receive monthly Account statements by email, or if the email address Navy Federal has is no longer current; (2) email notice ("Email Notice") to those Settlement Class members that Navy Federal maintains email addresses for; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice that will be available on the Settlement website (www.NFOverdraftLitigation.com) and via U.S. mail upon request. (*Id*. at ¶ 64.) Among the additional information provided, the Long Form notice will describe the procedure that Settlement Class members must follow to (a) opt-out of the Settlement or (b) object to the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; and/or to the Service Awards to the Plaintiffs. The Notice Program (Postcard Notice and Email Notice, including the Notice Re-Mailing Process) shall be completed no later than 60 days before the Final Approval Hearing. (*Id*. at ¶ 67.)

The Settlement Website (which will include hyperlinks to the Agreement, the Long Form Notice, the Preliminary Approval Order and such other documents as the Parties agrees to post or that the Court orders posted) will be established following Preliminary Approval and prior to the commencement of the Notice Program. (*Id*. at ¶¶ 53, 60.) The Settlement Administrator will also establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. (*Id*. at ¶ 59.)

Section XIII of the Agreement provides for a Release from each Settlement Class Member. (*Id.* at ¶¶ 84–88.)

## LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).

Courts generally employ a two-step process in evaluating a class action settlement. First, the court must assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Second, the court must determine "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). Where the parties reach a settlement prior to class certification, courts

apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotations and citation omitted).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal quotations and citation omitted). Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* at 1079 (internal quotations and citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs*, 955 F.2d at 1276.

## ANALYSIS

### A.    Class Certification for Settlement Purposes

The Parties seek to certify a class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23. Rule 23(a) provides that a class may be certified "only if (1) the class is so numerous that joinder of members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to meeting the Rule 23(a) requirements, a class must fall into one of the class categories specified in Rule 23(b). Fed. R. Civ. P. 23(b); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The Parties seek to certify the Settlement Class under Rule 23(b)(3). The Court finds that both Rules 23(a) and 23(b)(3) are satisfied at this stage.

### 1. Rule 23(a) Requirements

#### a. Numerosity

No specific number of class members is required to satisfy the numerosity requirement, although there is a presumption that a class with more than 40 members is impracticable to require joinder. *Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." (citation omitted)); *Gomez v. Rossi Concrete, Inc.,* 270 F.R.D. 579, 588 (S.D. Cal. 2010). In this case, the exact size of the class is unknown. However, the Parties represent that the Settlement Class will include thousands of members, with the exact number to be identified in order to complete the Notice Program. Accepting the Parties' representation and in light of general knowledge and common sense regarding the likely size of the class, the Court finds that the numerosity requirement is satisfied. Plaintiffs' motion for final approval, however, must identify the size of the class in a more concrete manner and explain the basis for the specific class size or range provided.

#### b. Commonality

The commonality requirement requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citation omitted). It "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiffs' common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389–390 (2011) (citation omitted). "So long as there is 'even a single common question,' a would-be class can satisfy

the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) (citation omitted)

In this case, there is a core common question of law and fact that pervades the claims of the Settlement Class. The core common factual question concerns the meaning of the provisions in Navy Federal's agreements regarding OOPS fees. The core common legal question is whether Navy Federal breached its agreements with accountholders when it assessed OOPS Fees on certain debit card transactions that were authorized into a positive balance. Because members of the Settlement Class are alleged to have been subjected to the same unlawful practice based on a similar factual scenario, Rule 23(a)(2) is satisfied.

### c.  Typicality

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim . . . of the class." Fed. R. Civ. P. 23(a)(3). "'Under this rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon*, 976 F.2d at 508). In general, the claims of the representative parties "need not be substantially identical" to those of all absent class members and need only be "reasonably coextensive" to qualify as typical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs claim that they were improperly charged OOPS Fees on transactions authorized into a positive balance but which settled into a negative balance. These claims are typical of absent settlement class members because they were allegedly subjected to the same Navy Federal practice leading to the assessment of OOPS Fees and have suffered the same injuries, specifically the improper assessment of

1  additional OOPS Fees.  Rule 23(a)(3) is therefore satisfied.

2              d.      **Adequacy of Representation**

3          Rule 23(a)(4) requires that "the representative parties will fairly and
4  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Due process
5  concerns requires that "absent class members must be afforded adequate
6  representation before entry of judgment which binds them."  *Hanlon*, 150 F.3d at
7  1020 (citation omitted). For the class representatives to adequately and fairly protect
8  the interests of the class, two criteria must be satisfied.  Adequacy of representation
9  requires that the class representatives do not have conflicts of interest with other class
10 members and that the named plaintiffs and their counsel will prosecute the action
11 vigorously on behalf of the class.  *Id.*

12         In this case, there is no clear indication at this stage that Plaintiffs or their
13 counsel have conflicts of interest with other class members.  Plaintiffs brought this
14 case as a class action and have vigorously pursued the claims in this case and appear
15 to be capable of continuing to do so.  Although Class Plaintiffs seek a service award
16 in addition to their portion of the Settlement Fund as Settlement Class Member, this
17 fact does not mean they have a conflicting interest with the remaining members of
18 the Settlement Class.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,
19 943 (9th Cir. 2015) (service awards "are intended to compensate class representatives
20 for work undertaken on behalf of a class are fairly typical in class action cases" and
21 "do not, by themselves, create an impermissible conflict between class members and
22 their representatives []."). Finally, Class Counsel appear to be qualified, competent,
23 and experienced in class-action lawsuits.  (*See* ECF No. 51-3, Joint Declaration of
24 Class Counsel ("Joint Decl."), *id.* Exs. 1–3.)  Rule 23(a)(4) thus appears to be
25 satisfied.  Because Rule 23(a)'s four requirements are satisfied at this stage of the
26 proceedings, the Court proceeds to assess the type of class action that may be
27 maintained for settlement purposes.

28         **2.      Rule 23(b)(3) Class**

The Parties seek certification of a Rule 23(b)(3) class. Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–23. The "[p]laintiffs must . . . demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka v, Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).

A Rule 23(b)(3) analysis is guided by the following considerations: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Because this case is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

With these considerations in mind, the Court finds that Rule 23(b)(3)'s requirements are satisfied. First, the predominance requirement is satisfied. For purposes of satisfying Rule 23(b)(3), the "predominance inquiry tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*,

– 11 –

521 U.S. 591, 623 (1997)).  In this case, liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.  For example, each Settlement Class member's relationship with Navy Federal arises from an account agreement that is the same or substantially similar in all relevant respects to other Settlement Class members' account agreements.  (Joint Decl. ¶ 34.)

Second, a class action is superior to having the individual members of the Settlement Class file multiple—if not potentially thousands—separate lawsuits. Such individual litigation would be impractical and inefficient given that the OOPS Fees at issue are $20 fees assessed on multiple transactions.  The Settlement Class is also alleged to have suffered the same injury, thus lessening the interests of any given class member in controlling the prosecution of separate actions.  Accordingly, the Court finds a class action is superior to other methods for the fair and efficient adjudication of the controversy between the parties.

**B.      Fairness, Reasonableness, and Adequacy of Proposed Settlement**

Once a class is certified, Federal Rule of Civil Procedure 23(e)(2) provides that "the court may approve [a settlement that would bind class members] only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

To determine whether a proposed settlement agreement is fair, reasonable, and adequate, "a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959.  These factors are "by no means an exhaustive list of relevant considerations[.]" *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore, due to the "dangers of

collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative," any "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026.

### 1. Strength of Plaintiffs' Case

The strength of Plaintiffs' case is not a foregone conclusion. In order to succeed on the merits of their breach of contract and conversion claims, Plaintiffs would have to prove that the relevant account agreements prohibited Navy Federal from assessing OOPS Fees on debit card transactions that were authorized into a positive account balance. Although Plaintiffs believe their case has merit, they and Class Counsel recognize that Navy Federal has potentially strong legal and factual grounds available to them for defending this action. (Joint Decl. ¶¶ 21, 24.) Navy Federal has consistently contended that its account agreements unambiguously informed Plaintiffs that OOPS Fees would be assessed on the transactions at issue. (*Compare* ECF No. 38 at ¶¶ 12, 14, 16 *with* ECF No. 9-2 at 8.) In its prior dismissal order, the Court noted that it could not "say that the Account Agreements clearly foreclose either interpretation." (ECF No. 33 at 15.) Despite its view that the case lacks merit, Navy Federal's data analysis prior to mediation estimated that the Settlement Class' most likely recoverable damages at trial would have been roughly $60 million. (Joint Decl. ¶ 23.) The proposed settlement amount of $24.5 million, resulting from the evaluation of a private and neutral mediator, represents a 30–40% recovery of this estimation. Given the disagreement between the Parties and the neutral third-party evaluation of the dispute, the Court finds that this factor weighs in favor of the $24.5 million settlement being fair, reasonable, and adequate.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

If this case were to proceed through further litigation rather than settlement, the Parties would bear substantial risk and a strong likelihood of protracted and

contentious litigation.  Recovery by means other than settlement would likely require additional years of litigation in this Court and before the Ninth Circuit.  The risk of future motions for summary judgment, for class certification and eventual appeals weighs in favor of settlement at this stage of the proceedings.  *See McPhail v. First Command Fin. Plan., Inc.*, No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *4 (S.D. Cal. Mar. 30, 2009) (noting that the potential complexity and possible duration of trial weighs in favor of granting final approval, and that post-judgment appeal would require many years to resolve and delay payment to class members).  Accordingly, this factor weighs in favor of approval.

### 3.  Risk of Maintaining Class Action Status Throughout Trial

The Court had not yet certified a class before the parties settled.  Nevertheless, given Navy Federal's vigorous defense of this case, it is likely that Navy Federal would have opposed Plaintiffs' certification motion, and "would surely [have] challenge[d] class certification on appeal" in the event a class had been certified outside of a settlement class.  *Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding that the likelihood that a certification decision would be appealed meant this factor weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009).  This factor weighs in favor of approval.

### 4.  The Amount Offered in Settlement

Navy Federal has agreed to provide a Settlement Fund of $24,500,000.00 and to separately pay up to $500,000.00 of Settlement Administration Costs.  "The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding uncertainties, risks, and costs that come with litigation a case to trial."  *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 THE, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008).  Although the amount is less than the $60 million Navy Federal estimated and will be reduced for attorneys' fees, costs, administrative fees, and Service Awards for the Plaintiffs, the

recovery is not obviously deficient, particularly when the OOPS Fees at issue are $20.00 fees. Indeed, "[t]he very essence of a settlement is a compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. The Court finds that the amount offered to be reasonable at this stage of the proceedings.

### 5. Extent of Discovery Completed and Stage of Proceedings

"The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citation omitted). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*.; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (noting that the extent of discovery and stage of the proceedings factors asks whether "the parties have sufficient information to make an informed decision about the settlement"). In this case, the parties extensively briefed the viability of Plaintiffs' claims—and, in particular, Plaintiffs' breach of contract claim—and the applicable law, followed by informal discovery utilizing an experienced expert, to prepare the Parties for an all-day mediation with the Honorable Walter D. Kelley, Jr. (Ret.) at which they arrived at an agreement to the material terms of the Settlement. (Joint Decl. ¶¶ 10–13.) Accordingly, the Court concludes that this factor weighs in favor of approval.

### 6. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underling litigation." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citations omitted). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Wert v. U.S. Bancorp, et al.*, No. 13-cv-3130-BAS(AGS), 2017 WL 1807633, at *6 (S.D. Cal. May 5, 2017) (quoting *Boyd v.*

*Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience)). Class Counsel are experienced in class action lawsuits, having lead or participated in numerous class-action lawsuits involving financial institutions around the country, with several cases centering on the same overdraft fee theory at issue in this case. (Joint Decl. ¶¶ 4, 28.) Class Counsel considered the risks and the arms-length negotiations with Navy Federal, causing them to believe this Settlement is in the best interests of the Settlement Class based on their investigations, negotiations, and their knowledge of the overdraft fee practice at issue in this case. (*Id.* ¶ 22.) The recommendations of Class Counsel in this case are presumed to be reasonable, particularly because of their experience and knowledge. This factor favors approval.

### 7. Settlement Attorneys' Fees Provision

The Settlement Agreement contemplates an award of attorneys' fees and costs to Class Counsel. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). In order for a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963.

In a common fund case, the district court has discretion to use either the percentage-of-the-fund method or the lodestar/multiplier method in calculating an appropriate attorneys' fee award. *Vicaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). Irrespective of which methodology the Court elects to employ, the court may not apply it mechanically or formulaically, but must undertake an analysis

that ensures that the fee award is reasonable. *In re Mercury Interactive Sec. Litig*., 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.2000).

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value[.]" *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491 (E.D. Cal. 2010). In most common fund cases, the award exceeds the 25% benchmark. *Id.* at 491–92; *Knight v. Red Door Salons, Inc*., No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. 2009); *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) ("[N]early all common fund awards range around 30%."). Generally, when applying the percentage-of-the-fund method, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). A district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig*., 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116–17 (C.D. Cal. 2008).

The Settlement Agreement provides that "Navy Federal agrees not to oppose Class Counsel's request for attorneys' fees of up to 35% of the Settlement Fund, and not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses." (Agreement at ¶ 89.) Plaintiffs' motion makes no attempt to argue that an award of 35% of the Settlement Amount in attorneys' fees is reasonable under the circumstances of this case. (*See generally* ECF No. 51-1.) Although this provision

of the Settlement Agreement gives the Court pause relative to the 25% benchmark, there is no indication in the instant record of bribery or collusion with respect to the provision. At this stage, the Court deems this provision to be reasonable because of its language that Class Counsel may seek "*up to*" 35%. (Agreement ¶ 89 (emphasis added).) Class Counsel makes no indication about the extent of the fees it will seek and any requested award may be below or at the 25% benchmark. Furthermore, "[t]he Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement Agreement from becoming Effective, nor shall it be grounds for termination." (*Id*.) Thus, even if Class Counsel requests an award of attorneys' fees that would constitute 35% of the Settlement Agreement, the Settlement Agreement is not contingent on the Court approving that amount.

Even so, the Court cautions that the circumstances necessitating an attorneys' fee award for Class Counsel that exceeds the general 25% benchmark are not readily apparent to the Court. This case is roughly sixteen months old and the docket was largely inactive for half this time. No activity occurred for two months after this case was filed. (ECF No. 1.) Navy Federal moved to dismiss less than two months after Plaintiffs filed the FAC, a pleading largely identical to the original Complaint. (ECF Nos. 1, 4, 9.) Navy Federal's motion to dismiss was pending for seven months. (*Compare* ECF No. 9 *with* ECF No. 33.) The pleadings were substantively amended once pursuant to the Court's dismissal order and the parties filed a notice of settlement some four months later. (ECF No. 48.) The earlier a case settles the less likely it is that class counsel are entitled to receive an attorneys' fee award that, if granted, would amount to a windfall relative to the course, duration, and reasonable needs of the litigation. *See Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that the case was settled early in the litigation supports the district court's ruling [not to award class counsel's twenty-five percent fee award request because] the 25 percent benchmark of the percentage-of-

the-fund approach might very well have been a 'windfall.'"); *see also Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Ariz. 1990) (affirming twenty-five percent fee award where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues").

Plaintiffs' counsel has not provided the Court adequate information at this time which would show that an attorneys' fee award of 35% of the Settlement Fund, or even above 25%, would be warranted. Under these circumstances, which "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors," the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Six Mexican Workers*, 904 F.2d at 1311. At the very least, the Court should employ the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 668 (E.D. Cal. 2008); *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash. 1994). Out of caution regarding the reasonableness of the attorneys' fees Class Counsel may seek, the Court instructs Class Counsel to file a *thorough* fee award motion prior to the Final Approval Hearing that details the hours reasonably spent representing Plaintiffs in this action, which will permit the Court to conduct a cross-check on the ultimate percentage of the common fund Class Counsel will seek in attorneys' fees. In addition, Class Counsel must address in the motion each of the factors identified above which would permit the Court to adjust upward or downward any award of attorneys' fees from the 25% benchmark.

### 8. Class Representative Service Award Provision

The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The Settlement Agreement provides that the Class Representatives will receive $5,000.00 each for a total of $10,000.00 to be paid from the Settlement Fund. (Agreement at ¶ 93.) This

– 19 –

amount of the incentive award for each representative is presumptively reasonable. *See, e.g., Burden v. SelectQuote Ins. Servs*., No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013); *Hopson v. Hanesbrands, Inc*., No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).  Accordingly, the Court finds that the service award provision of the Settlement Agreement should not bar preliminary approval.

## C.    Final Approval Hearing and Required Notice to Parties

### 1.    Notice Requirements

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule directs:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "'[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.'" *Wert*, 2017 WL 1807633, at *8 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

The proposed Settlement anticipates the retention of a third-party Settlement Administrator.  (Agreement ¶ 48.)  The Settlement Administrator will be provided with names and email or mailing addresses needed to send direct notice to each member of the Settlement Class.  (Agreement ¶¶ 57, 59.)  The Court has reviewed the proposed Notice Program and the Notices and finds that they generally satisfy the requirements of Rule 23(c)(2)(B).

17cv1280

## 2. Final Approval Hearing

Rule 23(e)(2) requires that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "'The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement.'" *Wert*, 2017 WL 1807633, at *8 (quoting *UAW v. GMC*, 235 F.R.D. 383, 386 (E.D. Mich. 2006)). A fairness hearing need not have all the procedures and protections of a full trial; it is a forum for intervenors to voice their objections and for the fairness of the settlement to be determined, and a court is within its discretion to limit the hearing as necessary to meet those objectives. *Wert*, 2017 WL 1807633, at *8 (citing *UAW*, 235 F.R.D. at 386; *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001)).

In their Agreement, the Parties agree to a framework for members of the Settlement Class who either wish to opt-out or to object to the proposed Settlement. (Agreement ¶¶ 60–63.) Although the Court deems the opt-out framework to be adequate, the Court reduces the extent of the objection procedures the Parties graft onto the requirement for an objection to be valid and considered by the Court. The Court understands the concerns underlying some of the additional steps the Parties propose, yet the extent of the proposed procedure could chill the ability of class members to object to the proposed Settlement Agreement, rather than elicit objections that subject a proposed binding Settlement Agreement to appropriate scrutiny. A court reviewing a proposed class action settlement for its fairness and reasonableness should carefully consider whether an objection procedure raises unnecessary and complicated hurdles to testing the fairness and reasonableness of a settlement that seeks to bind absent class members. *See, e.g., Mata v. Manpower Inc.*, No. 14-CV-03787-LHK, 2016 WL 4702744, at *11 (N.D. Cal. Sept. 8, 2016). More importantly, the parties cannot limit the Court's discretion regarding the type of notice it finds must be provided to class members to satisfy constitutional due

process concerns, including notice regarding the objection procedure class members will need to follow for *the Court* to consider their objections. The Court will conditionally approve the Settlement, but the Parties will need to file a motion for approval of amended notices that reflect a less onerous objection procedure as set forth below.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiffs' unopposed motion for preliminary approval (ECF No. 51.) The Court **ORDERS** the following:

1.  Pursuant to Federal Rule of Civil Procedure 23, the Court **CONDITIONALLY CERTIFIES** a class for settlement purposes only.

2.  The Settlement Class comprises:

> All current and former Navy Federal members who were charged an OOPS Fee on a transaction that was authorized into a positive available balance during the Class Period, excluding individuals who enrolled in OOPS for the first time after February 13, 2017.

Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers, and directors, all member of the Settlement Class who make a timely election to be excluded, and all judges assigned to this litigation and their family members.

3.  The Court conditionally appoints Plaintiffs Jenna Lloyd and Jamie Plemons, as the Class Representatives of the Settlement Class.

4.  The Court conditionally appoints attorneys Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow P.A., Hassan Zavareei and Andrea R. Gold of Tycko & Zavareei, LLP, and Taras Kick of The Kick Law Firm, APC to represent the Settlement Class.

5.  The Court conditionally appoints Epiq as the Settlement Administrator.

6.  The Court conditionally approves, as to form and content, the class notices attached to the Motion for Preliminary Approval as Exhibits C, D, and E. **The conditions for approval of the Notices are as follows**:

a.   On page 3 of the long form notice, lodged as Exhibit E, replace "No. 17-cv-02180" with "No. 17-cv-1280".

b.   On page 6 of the long form notice in Section 10, replace "17-01280" with "17-cv-1280",

c.   The long form notice requires an overly complex and onerous procedure for filing objections. *See* 4 Newberg on Class Actions §13:30 (5th ed.) (stating objection procedures such as the ones proposed here can have the effect of unduly chilling objections). **The parties shall modify the long form notice to include only the following requirements**:

   i.   Inclusion of the case name and case number; the objector's name, address, telephone number, and signature;

   ii.   Explanation of how the objector is a Settlement Class member;

   iii   Explanation of the nature of the objection and citation to any relevant legal authority;

   iv.   The number of times the objector has objected to a class action settlement in the past five years and the caption for any such case(s);

   v.   The identity of any counsel representing the objector;

   vi.   Indication as to whether the objector (whether *pro se* or through representation) intends to testify at the Final Approval Hearing; and

   vii.   Submission of objections, by private courier or first class mail postmarked no later than the objection deadline, to the Clerk of Court, class counsel, and defense counsel. The notice shall designate service of only **one** address for class counsel and

one address for defense counsel, such that an objector needs to send a total of only three envelopes.

    d.    The Parties shall amend all notices to include the appropriate deadlines based on this Order.

7. **The Parties shall file a motion for approval of amended notices compliant with the preceding paragraph *no later than November 5, 2018*. The Court will review the amended notices on an expedited basis. Failure to comply with this paragraph will result in the Court vacating this Order**.

8. As soon as possible after the entry of the Court's order on the motion for approval of the amended notices, the Settlement Administrator shall provide Notice to the Settlement Class pursuant to the Notice procedure set forth in the Settlement Agreement and paragraph 6(c) of this Order. **The Settlement Administrator shall post a copy of this Order to the website maintained in connection with the Settlement. In connection with posting this Order, the Administrator shall make clear that the Court has outlined the appropriate objection procedure for an Objector to follow, as specified in paragraph 6(c) of this Order.** With these conditions, the Court finds that the Notice Program is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.

    Specifically, the Court finds that the manner of dissemination of the proposed Notice complies with Federal Rule of Civil Procedure 23(e) as it is a reasonable manner of providing notice to those Settlement Class members who would be bound by the Settlement. The Court also finds that the manner of dissemination of the Notice complies with Federal Rule of Civil Procedure 23(c)(2), as it is also the most practicable notice under the circumstances; provides individual notice to all Settlement Class members who can be identified through a reasonable effort; and is reasonably calculated, under all the circumstances, to apprise the

Settlement Class Members of the pendency of this Action, the terms of the Settlement, and their right to object to the Settlement or exclude themselves from the Settlement Class.

9.     The Notices must identify the opt-out and objection deadline of 30 days before the Final Approval Hearing.  Pursuant to the procedure set forth in paragraph 6(c) of this Order, any Settlement Class Member may object to the terms of the proposed Settlement, the certification of the Settlement Class, the entry of the Final Approval Order, the amount of attorneys' fees and expenses requested by Class Counsel, and/or the amount of the Service Awards requested for the named Plaintiffs. Any Settlement Class member who does not file a valid and timely objection to the Settlement shall be barred from seeking review of the Settlement by appeal or otherwise.

10.     The Court **PRELIMINARILY APPROVES** the Settlement and the terms and conditions of Settlement set forth therein, subject to further consideration at the Final Approval Hearing.

11.     The Settlement shall not constitute an admission, concession, or indication of the validity of any claims or defenses in the Action, or of any wrongdoing, liability, or violation by Navy Federal, which vigorously denies all of the claims and allegations raised in the Action.

12.     Any person in the Settlement Class definition may, upon request, be excluded from the Settlement by submitting to the Settlement Administrator a notice that he or she intends to opt-out of the Settlement.  To be effective, this opt-out statement: (i) must be post-marked no later than the opt-out deadline; (ii) include the Settlement Class member's name, address, and telephone number; (iii) a statement that the Settlement Class members wants to be excluded from the Settlement Class; and (iv) must be personally signed by the Settlement Class member.  All persons who timely submit properly completed requests for exclusion shall have no rights under

the Settlement and shall not share in the benefits of the Settlement and shall not be bound by the Agreement.

13. No person shall purport to exercise any exclusion rights for any other person, or purport to exclude any other Settlement Class member as a group, aggregate or class involving more than one Settlement Class member, or as an agent or representative. Any such purported exclusion shall be void and the person that is the subject of the purported opt-out shall be treated as a Settlement Class Member and be bound by the Settlement.

14. Members of the Settlement Class may object to the Settlement by following the instructions set forth in the Notices. To be timely, the objection if submitted by mail must be postmarked, and if by private courier (*e.g*., Federal Express) bear a shipping date of, no later than 30 days before the date for the Final Approval Hearing. To be valid and considered by the Court, an objection must include the information listed in paragraph 6(c) of this order.

15. Plaintiff and Navy Federal may file responses to any objections. Any Settlement Class member who timely files and serves an objection in accordance with this Order may appear at the Final Approval Hearing, either in person or through an attorney.

16. The dates of performance contained herein may be extended by order of the Court, for good cause shown, without further notice to the Settlement Class.

17. The Settlement will not become effective unless the Court enters an order finally approving the Settlement. If the Settlement does not become effective, or if the Settlement is not finally approved, then the Settlement shall become null and void, and this Order shall be null and void and shall be vacated. The parties to the Settlement shall be returned to the status each occupied before the entry of the Order, without prejudice to any legal argument that any of the parties to the Settlement may have asserted but for the Settlement (including but not limited to class certification). In such event, the Settlement, the Agreement, exhibits, attachments and all

negotiations and proceedings related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Agreement.

18.	Plaintiffs' motion for final approval of the Settlement must include the required and customary filings.  Subject to further order from the Court, the motion papers shall include:

a.	An affidavit from the Settlement Administrator regarding compliance with its duties under the settlement and this order, a copy of the actual notices (email, postcard, and long form) sent to the class, and a report on (1) the number of class members to whom email notice was sent, (2) the number of returned undelivered email notices, (3) the number of postcard notices sent, (4) an explanation of efforts to locate correct addresses for returned undelivered postcard notices after the first mailing, (5) the number of notices sent to the updated addresses in a second mailing, (6) the number of such notices returned undelivered, and (7) any and all appropriate information regarding the Settlement Administrator's efforts to send notice.

19.	**The Final Approval Hearing will be conducted in Courtroom 4B, (4th Floor), of the U.S. District Court for the Southern District of California, located at 221 West Broadway, San Diego, CA 92101 on April 22, 2019, at 11:00 A.M**., for the following purposes:

a.	finally determining whether the Settlement Class meets all applicable requirements of Federal Rule of Civil Procedure 23 and whether the Settlement Class should be certified for the purposes of effectuating the Settlement;

b.	finally determining whether the proposed Settlement of the Action on the terms and conditions provided for in the Agreement is fair,

reasonable, and adequate and should be approved and ordered by the Court; and

      c.     ruling upon such other matters as the Court may deem appropriate.

20.    The Court **SETS** the following schedule:

| Event | Calendar Days Before Final Approval Hearing |
|---|---|
| **Mailed Notice (Postcard and Email Notice) Complete** | No later than 60 days before Final Approval Hearing |
| **Motion for Final Approval; Motion for Attorneys' Fees and Costs; Motion for Service Awards** | No later than 45 days before Final Approval Hearing |
| **Opt-Out Deadline** | No later than 30 days before Final Approval Hearing |
| **Deadline to Submit Objections** | No later than 30 days before Final Approval Hearing |
| **Deadline to Respond to Objections** | No later than 15 days before Final Approval Hearing |
| **Final Approval Hearing** | April 22, 2019 |

21.    The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to members of the Settlement Class.

22.    No discovery with regard to the Settlement shall be permitted as to any of the settling parties other than as may be directed by the Court upon a proper showing by the party seeking such discovery, except limited discovery taken by Class Counsel and/or Navy Federal on any objector consistent with the Federal Rules of Civil Procedure.

23.     All discovery and other litigation in this case is hereby stayed pending Final Approval of the Settlement.

24.     Pending Final Approval of the Settlement, Plaintiffs, all persons in the Settlement Class, and persons purporting to act on their behalf are enjoined from commencing or prosecuting (either directly, representatively, or in any other capacity) any Released Claim against any of the Released Parties in any action, arbitration or proceeding in any court, arbitration forum or tribunal.

25.     Subject to the Court's approval of the motion for approval of amended notice, the Parties shall carry out the conditionally approved Settlement.  Class Counsel and counsel Navy Federal are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement, including making, without further approval of the Court, minor changes to the form or content of the Notices, and other exhibits that they jointly agree are reasonable or necessary.

26.     **For any and all attorneys' fees and costs requested, Class Counsel must submit a detailed motion, supported by declarations and appropriate evidence, which clearly identifies the basis for the amount of attorneys' fees requested for each attorney and explains why all attorneys' fees and costs requested is warranted under the circumstances of this case**.  The motion must address the following factors: (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee, (5) the burdens carried by Class Counsel, and (6) the awards made in similar cases.

**IT IS SO ORDERED.**

**DATED:  October 22, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv1280