# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA LLOYD, JAMIE PLEMONS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. 17-cv-1280-BAS-RBB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**[ECF No. 64];**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS**<br><br>**[ECF No. 65];**<br><br>**(3) DISMISSING ACTION WITH PREJUDICE**<br><br>**AND**<br><br>**(4) DIRECTING CLERK OF THE COURT TO ENTER FINAL JUDGMENT** |

Plaintiffs Jenna Lloyd and Jamie Plemon (collectively, "Plaintiffs") move for final approval of their $24.5 million class action settlement with Defendant Navy Federal Credit Union ("Navy Federal") in this overdraft fees class action. (ECF No.

64.)  Plaintiffs also move for approval of $6,125,000.00 in attorneys' fees requested by Class Counsel, reimbursement of certain expenses Class Counsel incurred, and service awards for Plaintiffs as Class Representatives.  (ECF No. 65.)  Navy Federal does not oppose these motions, nor has any class member objected to approval of the Settlement or the relief sought in the motions.  The Court held a Final Approval Hearing on May 20, 2019.  (ECF No. 69.)  For the reasons herein, the Court: (1) grants Plaintiffs' motion for final approval, (2) grants in part and denies in part Plaintiffs' motion for attorneys' fees, costs, and service awards, (3) dismisses this action with prejudice, and (4) directs entry of final judgment in this matter.

## RELEVANT BACKGROUND

Plaintiffs are California citizens who commenced this case against Navy Federal, "a national bank with its headquarters and principal place of business located in Vienna, Virginia," as a putative class action in June 2017, invoking the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the basis for this Court's jurisdiction.  (ECF No. 1 ¶¶ 24, 26–27.)  On August 22, 2017, Plaintiffs filed the First Amended Complaint ("FAC"), a pleading largely identical to the original complaint.  (ECF No. 4.)

In their then-operative pleadings, Plaintiffs alleged that Navy Federal improperly assessed and collected Optional Overdraft Protection Fees ("OOPS Fees") from Plaintiffs and a putative class of Navy Federal accountholders on certain debit card transactions that were authorized into positive account balances, but which settled into negative balances due to subsequent transactions.  Plaintiffs claimed that pursuant to its account agreements with accountholders, Navy Federal was not permitted to charge OOPS Fees on debit card transactions that were authorized on an account with positive funds "to cover" the transaction but settled into a negative account balance.  For this alleged improper practice, Plaintiffs asserted state law

claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion and unjust enrichment on behalf a national putative class. On behalf of a California sub-class, Plaintiffs asserted claims pursuant to the fraudulent prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. Navy Federal moved to dismiss all claims in the FAC in September 2017. (ECF No. 9.)

On April 12, 2018, this Court granted in part and denied in part Navy Federal's motion to dismiss. (ECF No. 33.) After considering supplemental briefing from the parties regarding certain choice-of-law issues presented by the dismissal papers, the Court determined that Virginia law applies to the common law claims pursuant to a contractual choice of law provision in Navy Federal's agreements with accountholders. (*Id*.) The Court denied Navy Federal's motion insofar as it concerned Plaintiffs' breach of contract and conversion claims, but otherwise granted the motion. The Court dismissed with prejudice Plaintiffs' unjust enrichment and CLRA claims and dismissed without prejudice Plaintiffs' UCL fraudulent prong and breach of the implied covenant claims, with the latter to be pleaded as a part of a breach of contract claim in the event Plaintiffs sought to amend the pleadings. (*Id*.)

Plaintiffs filed the now-operative Second Amended Complaint ("SAC") on May 4, 2018, alleging a breach of contract claim, which incorporated a breach of the implied covenant of good faith and fair dealing claim, and a conversion claim. (ECF No. 38.) Navy Federal answered the SAC and the Parties engaged in informal settlement discussions, including a private mediation before the retired Honorable Walter Kelley Jr. (ECF Nos. 39, 41, 45.) On September 25, 2018, the Parties filed a notice of settlement, indicating that they had agreed to settle the case and that Plaintiffs would seek preliminary approval of the anticipated settlement agreement.

(ECF No. 48.)

Plaintiffs filed an unopposed motion for preliminary approval of the settlement on October 15, 2018, which outlined the terms of the settlement and the proposed notice plan. (ECF No. 51.) The Court granted Plaintiffs' motion on October 22, 2018, setting April 22, 2019 as the Final Approval Hearing and requiring Plaintiffs to provide amended class notices to address certain concerns the Court had with the originally proposed notice and objection procedure. (ECF No. 54.) Plaintiffs corrected the deficiencies in their proposed notices and proceeded with their notice plan with the Court's approval. (ECF Nos. 55, 56.) At the parties' joint request, the Court reset the Final Approval Hearing for May 20, 2019 to account for issues with notice administration. (ECF Nos. 58, 59.)

Plaintiffs filed their present unopposed motions on April 4, 2019, 46 days before the Final Approval Hearing. (ECF Nos. 64, 65.) Both parties attended the Final Approval Hearing on May 20, 2019, at which counsel responded to certain questions of the Court. (ECF No. 66.) No objectors appeared. The Court now turns to the merits of Plaintiffs' unopposed motions.

## SETTLEMENT OVERVIEW[1]

Although the Court previously described the Settlement in its preliminary approval order, the Court recounts its salient aspects here once more. The Settlement Class is defined as follows:

All current and former Navy Federal members who were charged an OOPS

---

[1] The proposed settlement agreement is attached as Exhibit A to Plaintiffs' unopposed motion for final approval of the class action settlement. (ECF No. 64-2 Ex. A.) For the purposes of this order, the Court refers to this agreement as the "Settlement" or the "Settlement Agreement."

Fee on a transaction that was authorized into a positive available balance during the Class Period, excluding individuals who enrolled in OOPS for the first time after February 13, 2017.

All Settlement Class Members who have not opted out of the Settlement are bound by the release set forth in the Agreement.  (Agreement ¶¶ 84–88.)

The Settlement provides for Navy's Federal's establishment of a Settlement Fund of $24,500,000.00 for the benefit of Settlement Class members, as well as Navy Federal's separate commitment to pay up to $500,000.00 in Settlement Administration Costs.  (*Id.* ¶¶ 29, 55.)  The Settlement Fund will be used to: (a) pay Settlement Class Members their respective Settlement Class Member Payments, (b) Class Counsel for any Court awarded attorneys' fees and litigation expenses and costs, (c) any court-awarded Service Awards for the Class Representatives, (d) Settlement Administration Costs above the Navy Federal Settlement Administration Costs Cap, and, in the event funds remain after the initial distribution to Settlement Class Members, (e) reimburse Navy Federal up to its cap.  (*Id.*)  The Settlement contemplates a $5,000.00 Service Award for each of the named Plaintiffs.  (*Id.* at ¶ 93.)  It also provides that Class Counsel is authorized to request, and Navy Federal will not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action.  (*Id.* at ¶ 89.)

Settlement Class members do not have to submit claims or take any other affirmative step to receive relief under the Settlement or to receive a Settlement Class Member Payment.  Instead, within 30 days following the Effective Date of the Settlement, Navy Federal and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members.  (*Id.* ¶ 73.)  All Settlement Class Members who are entitled to a Settlement Class Member Payment will receive a *pro rata* distribution from the Net Settlement Fund based on the number of Relevant

Overdraft Fees, as identified by Plaintiffs' expert, the Settlement Class Member paid or was assessed during the Class Period. (*Id*. ¶ 76.) Payments to Settlement Class Members who are Current Account Holders will be made by Navy Federal crediting such Settlement Class Members' Accounts, and notifying them of the credit, or by checks mailed by the Settlement Administrator. (*Id*. ¶ 81.) Past Account Holders will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. (*Id*. ¶ 74.) Any uncashed or returned checks will remain in the Settlement Fund, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments. (*Id*. ¶ 82.)

In the event funds remain in the Settlement Fund after the initial distribution to Settlement Class Members, Navy Federal shall be reimbursed for the Settlement Administration Costs it paid. Thereafter, if funds remain, to the extent feasible, those funds shall be distributed in a second distribution to those Settlement Class Members that were paid or credited with a Settlement Class Member Payment in the first distribution. All Settlement Administration Costs of a second distribution will be paid out of the Settlement Fund, including those related to Navy Federal's facilitation of Account credits in the event of a second distribution. If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient or recipients, proposed by the Parties and to be approved by the Court, that work to promote financial literacy, including for members of the military or veterans. (*Id*. ¶ 83.) The Settlement is to be administered by Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator. (*Id*. ¶¶ 48, 59.)

The Settlement Agreement provides for a Notice Program comprised of three parts: (1) direct mail postcard notice ("Postcard Notice") to all Settlement Class

members who do not receive monthly Account statements by email, or if the email address Navy Federal has is no longer current; (2) email notice ("Email Notice") to those Settlement Class members that Navy Federal maintains email addresses for; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice that will be available on the Settlement website (www.NFOverdraftLitigation.com) and via U.S. mail upon request. (*Id.* ¶ 64.) The Settlement Administrator was to establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. (*Id.* ¶ 59.)

## JURISDICTION

Before the Court turns to the merits of whether to grant final approval of the Settlement, the Court must assure itself that it possesses subject matter jurisdiction over this action.[2] Federal courts are courts of limited jurisdiction, and the burden of establishing jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[A] court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action . . . ." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). And under Fed.

---

[2] The Court is not required to *sua sponte* address whether it possesses personal jurisdiction over the parties. *See McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, —F. Supp. 3d—, 2019 WL 1383804, at *17 (S.D. Cal. Mar. 27, 2019). Unlike subject matter jurisdiction, "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest" that "can, like other such rights, be waived," by a person or entity who "submits to the power of the court by appearance." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Navy Federal has expressly agreed to settle the present nationwide class action. The Court finds that Navy Federal's voluntary accession to the exercise of personal jurisdiction, including over non-residents of California, for the purposes of the Settlement suffices for the exercise of personal jurisdiction over all parties, including non-California class members.

– 7 –

R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiffs have invoked jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), since the commencement of this action. (ECF No. 1 ¶ 24 (original complaint); FAC ¶ 24; SAC ¶ 24.) Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which," in relevant part, "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). Unlike the complete diversity required for diversity jurisdiction under 28 U.S.C. § 1332(a)(1), *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996), CAFA requires only minimal diversity for a court to exercise jurisdiction. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) ("[U]nlike other civil actions, where there must be complete diversity between named plaintiffs and defendants, CAFA requires only what is termed 'minimal diversity.'").

At this point, there is no question that the amount in controversy CAFA requires is satisfied given the $24,500,00.00 settlement amount as well as the parties' own estimation that the class could have recovered up to $60 million at trial, if successful. Plaintiffs also alleged that the class included thousands of members. (SAC ¶ 87.) The Court therefore considers whether Plaintiffs have shown the existence of minimal diversity between any Plaintiff and Navy Federal.

Subject to certain express limitations regarding certain types of defendants, CAFA does not alter the general rules regarding citizenship determinations. *See* 28 U.S.C. § 1332(d); *see also Bicek v. C & S Wholesale Grocers, Inc.*, No. 2:13-cv-00411-MCE-KJN, 2013 WL 4009239, at *10 (E.D. Cal. Aug. 5, 2013) (relying on

general rules regarding determination of citizenship to assess CAFA jurisdiction); *Hayes v. Wells Fargo Bank, N.A.*, No. 13-cv-1707-L(BLM), 2013 WL 3894945, at *2 (S.D. Cal. July 26, 2013) (same).

With respect to the citizenship of the individual Plaintiffs, a person's state of citizenship is "determined by her state of domicile, not her state of residence." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiffs are citizens of California. (SAC ¶ 26.) Thus, the only issue is whether Plaintiffs "are citizens of a State different from" Navy Federal.

Plaintiffs invoke diversity jurisdiction, specifically alleging that Navy Federal "is a national bank with its headquarters and principal place of business located in Vienna, Virginia." (*Id.* ¶ 26.) In response to the Court's request for supplemental briefing regarding a choice-of-law issue presented by Navy Federal's motion to dismiss, Navy Federal expressly referred to diversity jurisdiction and did not dispute Plaintiffs' allegation. (ECF No. 29 at 2–4.) Navy Federal relied heavily on the allegation to argue that Virginia law should apply to Plaintiffs' common law claims, given a contractual choice of law provision indicating that its account agreements are governed by federal law and Virginia law. (*Id.* at 3–5.)

In resolving Navy Federal's motion to dismiss, the Court implicitly assumed the existence of diversity jurisdiction in its choice-of-law analysis. *See Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *4–6 (S.D. Cal. Apr. 12, 2018). The Court anchored this analysis in the undisputed allegation that Navy Federal is headquartered in and maintains its principal place of business in Virginia. *Id.* at *4. Like this Court, other federal courts have similarly assumed the exercise of diversity jurisdiction over Navy Federal. At least one federal court has expressly determined that Navy Federal is a citizen of Virginia for the purposes of

assessing the existence of diversity jurisdiction under 28 U.S.C. § 1332 because Navy Federal maintains a principal place of business in Virginia.  *See Dean v. Navy Fed. Credit Union*, No. CIV.A. RDB 09-1989, 2009 WL 3817587, at *3 (D. Md. Nov. 12, 2009) ("Navy Federal is a federally chartered credit union with its principal place of business in Virginia.  Because Navy Federal's principal place of business is Virginia, it is a citizen of Virginia." (citing 28 U.S.C. § 1332(c)(1)).  At least three other federal courts have assumed that Navy Federal is a Virginia citizen in passingly addressing the existence of diversity jurisdiction in cases involving Navy Federal as a defendant.  *See Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2017 WL 5075930, at *1 (W.D. Tex. June 9, 2017) (discussing existence of jurisdiction under Section 1332(a) and also noting that CAFA jurisdiction would exist because the case was a class action involving an amount in controversy exceeding $5 million); *Heuvel v. Navy Fed. Credit Union*, No. CV 3:16-1839, 2016 WL 7155769, at *4 (S.D. W. Va. Dec. 7, 2016); *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 229 (Bankr. D. Md. 2011).  This Court would have no pause in affirming the existence of jurisdiction if these decisions were the only decisions on the matter, particularly given that no party or objector has disputed this Court's subject matter jurisdiction.

However, in the time since this Court's dismissal order and after the Court granted Plaintiffs' unopposed motion for preliminary approval of the Settlement, a ruling by another federal district court has raised a question whether this Court possesses subject matter jurisdiction over this action.  *See Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 368 F. Supp. 3d 889 (E.D. Va. Mar. 18, 2019), *appeal filed*, *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, No. 19-1341 (4th Cir. Apr. 3, 2019).  Expressly referring to this Court's dismissal order and the various other federal courts assuming that Navy Federal is a Virginia citizen, the *Navy Federal Credit Union* court determined that although Navy Federal is a corporation, Navy Federal's principal place of business in Virginia does not render Navy Federal a Virginia

citizen within Section 1332(c)'s scope and thus Navy Federal cannot invoke diversity jurisdiction. *Id.* at 894 n.3. Although the *Navy Federal Credit Union* court recognized that its conclusion was not compelled by Supreme Court or Fourth Circuit precedent addressing the questions it considered and that federal courts "are split as to § 1332(c)'s applicability" to Navy Federal, the court granted a defendant's Rule 12(b)(1) motion to dismiss and dismissed the action for lack of subject matter jurisdiction. *Id.* at 893–94.[3] In doing so, it appears that the *Navy Federal Credit Union* court may be the first federal court not to treat Navy Federal as a Virginia citizen based on Navy Federal's principal place of business.

Confronted, albeit indirectly, with the question of whether it possesses subject matter jurisdiction to entertain Plaintiffs' unopposed motions, the Court respectfully departs from the conclusion in *Navy Federal Credit Union v. LTD Financial*

---

[3] The *Navy Federal Credit Union* court purported to follow the majority of federal courts on the issue and, in doing so, cited a Ninth Circuit case. 368 F. Supp. 3d at 894 n.3 (citing, *inter alia*, *Hancock Fin. Corp. v. Fed Sav. & Loan Ins. Corp.*, 492 F.2d 1325 (9th Cir. 1974)). *Hancock* is Ninth Circuit precedent and thus the Court finds it appropriate to address the case. This Court reads *Hancock* more narrowly than the *Navy Federal Credit Union* court. *Hancock* held that the Federal Savings and Loan Insurance Corporation ("FSLIC") did not qualify for diversity jurisdiction under Section 1332 "because the FSLIC is an agency and instrumentality of the federal government it is not a citizen of any particular state for diversity purposes." *Hancock Fin. Corp.*, 492 F.2d at 1329. Yet, in reaching this conclusion, the Ninth Circuit expressly relied on a decision involving a case that involved another corporation chartered by the federal government and that also had its principal place of business in the District of Columbia to find that the FSLIC "has citizenship in no particular state for diversity purposes." *Id.* (citing *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 345 F. Supp. 885, 888 (S.D. Iowa 1972)); *see also Burton v. United States Olympic Comm.*, 574 F. Supp. 517, 520 (C.D. Cal. 1983) (recognizing *Hancock* as concerning a federal corporation that "also has its principal place of business in Washington, D.C., similarly has no citizenship in any particular state for diversity purposes."). Although Navy Federal is federally chartered, it is undisputed that its principal place of business is not in the District of Columbia and thus *Hancock* does not control.

*Services, LP.*  As a general matter, a "corporation" is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  As even the *Navy Federal Credit Union* court recognized, the term "corporation" in Section 1332(c) "is a broad term."  *Navy Fed. Credit Union*, 368 F. Supp. 3d at 894.  Navy Federal qualifies as a "corporation" in view of the statues under which credit unions are created.  *See* 12 U.S.C. § 1754 (stating that upon approval by the board of a federally chartered credit union, the credit union's certificate "shall be the charter of the corporation" and that upon such approval "the Federal credit union shall be a body corporate and as such. . . shall be vested with all of the powers and charged with all of the liabilities conferred and imposed by this chapter upon corporations organized hereunder").  *Navy Federal Credit Union* recognized as much.  *Navy Fed. Credit Union*, 368 F. Supp. 3d at 893 ("[A]ccording to the plain language of the statute under which they are created, federal credit unions are corporation . . . . Diversity jurisdiction is therefore not defeated on that basis.").  Without more, Navy Federal would appear to fall within the principal place of business citizenship aspect of Section 1332(c)(1).

Despite recognizing that Navy Federal is a corporation, the *Navy Federal Credit Union* court determined, however, that "Congress intended § 1332(c) to modify only the citizenship of state-chartered corporations."  *Navy Fed. Credit Union*, 368 F. Supp. 3d at 894.  The court determined that the rest of Section 1332 showed that Navy Federal is not the type of corporation that qualifies for citizenship under Section 1332, noting that the first portion of Section 1332 refers only to corporations incorporated by a state or a foreign state and Section 1332 connects its first portion with the principal place of business citizenship rule with the word "and." *Id.*  And the court observed that, faced with this text, the Supreme Court has determined that national banks "do not 'fit comfortably within' § 1332(c)'s embrace" because they lack a state of incorporation.  *Id.* at 894–95 (quoting *Wachovia Bank v.*

*Schmidt*, 546 U.S. 303, 306 (2006)).  Despite this analysis, *Navy Federal Credit Union*'s conclusion drew less on Section 1332's text and instead relied heavily on "legislative history" concerning why Section 1332(c)'s current form was enacted in 1958, anchoring its analysis in an historical account beginning in 1809.  *Id.* at 895–98.

This Court acknowledges that the position adopted by the *Navy Federal Credit Union* court and its focus on the history pre-dating the 1958 amendment to Section 1332 that added the principal place of business citizenship rule is not unique.  A number of federal courts have similarly determined that federally chartered corporations, including federal credit unions, do not qualify as citizens of a state for the purposes of Section 1332 even under the principal place of business citizenship rule.  *See Am. Airlines Fed. Credit Union v. Eck*, No. 18 C 599, 2018 WL 2332065, at *1–2 (N.D. Ill. May 23, 2018) (finding that federal credit union with a principal place of business in Texas did not qualify as Texas citizen although noting that "the Seventh Circuit has not spoken on the citizenship of federally-chartered federal credit unions[.]"); *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg., Inc*., 415 F. Supp. 2d 636, 639 (E.D. Va. 2006) ("While the Supreme Court has never addressed this issue, the lower courts have uniformly construed § 1332(c) to apply only to companies incorporated under state law and thus courts continue to adhere to the general rule that federally chartered companies are ineligible for diversity jurisdiction.").[4]

_____

[4] Curiously, while several of these courts aver that congressional action is expressly required to establish that federally chartered corporations can possess state citizenship, these courts also recognize a judicially-fashioned localization doctrine established in *Elwert v. Pacific First Federal Savings and Loan Association of Tacoma, Washington*, 138 F. Supp. 395 (D. Or. 1956), and recognized in *Feuchtwanger v. Lake Hiawatha Credit Union*, 272 F.2d 453 (3d Cir. 1959).  This doctrine, however, would appear to be inconsistent with the notions that federally chartered corporations are national citizens by virtue of their federal charter, and that

Even so, this Court does not find persuasive the notion that because Navy Federal does not fit comfortably within Section 1332(c), it cannot fit into the plain language of Section 1332(c) at all. According to its plain language, Section 1332(c) establishes two independent bases for state citizenship of a corporation. In addition to the cases involving Navy Federal, some federal courts have comfortably exercised diversity jurisdiction over cases involving federal credits union. *See Tinker Fed. Credit Union v. State Farm Mut. Auto. Ins. Co.*, No. CIV-12-956-R, 2012 WL 12865260 (W.D. Okla. Oct. 30, 2012) (denying motion to remand action to state court); *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012) (referring to itself as a "federal court sitting in diversity" in action involving a federally chartered credit union). Until binding precedent directly addresses the issue and given that federal courts have generally treated Navy Federal as a citizen of Virginia based on its principal place of business, this Court is reticent to depart from its earlier assumption that diversity jurisdiction exists over this action with respect to Navy Federal. Accordingly, the Court concludes that it possesses jurisdiction and proceeds to consider Plaintiffs' motions.

## FINAL APPROVAL OF SETTLEMENT UNDER RULE 23

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[.]" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), *cert.*

_____

congressional action beyond Section 1332 is required for a federally chartered corporation with a principal place of business in a state to make a claim to state citizenship for diversity jurisdiction purposes.

*denied*, 506 U.S. 953 (1992).

To approve a class action settlement, a federal court conducts a three-step inquiry. First, a court assesses whether the defendant has met CAFA's notice requirements for class action settlements. *See* 28 U.S.C. § 1715(d). Second, a court determines whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, a court ensures that the requirements of Rule 23(e)(2) are satisfied by conducting a hearing and determining whether the settlement agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 886 (C.D. Cal. 2016) (conducting three-step inquiry); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (same). The Court addresses each step.

## A.    CAFA Notice

Under CAFA, "not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement," which should include, *inter alia*, "any proposed or final class action settlement" or "any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants." 28 U.S.C. § 1715(b)(4)–(5). "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." *Id.* § 1715(d). Failure to comply with the notice provision carries certain consequences. *Id.* § 1715(e).

Plaintiffs filed their motion for preliminary approval of the Settlement on October 15, 2018. (ECF No. 51.) Navy Federal thus had until October 25, 2018 to provide notice to all appropriate State and Federal officials for the initial motion. Navy Federal provided a certification to this Court on October 19, 2018 that it sent by certified mail the required Section 1715(b) notice to the appropriate officials on the same day. (ECF No. 53.) In particular, Navy Federal provided notice to the United States Attorney General as well as the attorneys general of the 50 states and 4 territories where class members maintain mailing addresses, for a total of 55 letters. (ECF No. 53-2 Jason Kim Decl. ¶ 2.) As a result of the requirement in the Court's preliminary approval order that Plaintiffs submit amended class notices, Navy Federal provided a supplemental Section 1715(b) certification, which reflected that Navy Federal had supplemented its notices to the appropriate State and Federal officials by certified mail on November 5, 2018. (ECF No. 57; ECF No. 57-2 Jason Kim Decl. ¶ 3.)

Based on this record, the Court concludes that Navy Federal properly and timely notified the appropriate government officials of the Settlement in accordance with Section 1715(b). At the Final Approval Hearing, counsel confirmed that no objections have been received. More than ninety (90) days have elapsed since Navy Federal provided notice pursuant to CAFA and the May 20, 2019 Final Approval Hearing. Accordingly, the Court finds that the CAFA notice requirements are satisfied.

## B. Rule 23(a) and (b)(3) Class Certification

The Court previously certified the Settlement Class under Rule 23(a) and 23(b)(3) in its order granting Plaintiffs' unopposed motion for preliminary approval. *See Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 5247367, at *4–7 (S.D. Cal. Oct. 22, 2018). The Settlement Class remains the same

for the purposes of the present motion for final approval. Accordingly, the Court affirms its prior determination that the Settlement Class satisfies Rule 23's class certification requirements. *See Chambers*, 214 F. Supp. at 887 (confirming certification of Rule 23(b)(3) class previously approved in an order granting preliminary approval "[b]ecause circumstances have not changed[.]"); *In re Apollo Group Secs. Litig*., Master File No. CV 04-2147-PHX-JAT; CV 04-2204-PHX-JAT (Consolidated); CV 04-2334-PHX-JAT (Consolidated), 2012 WL 1378677, *4 (D. Ariz. Apr. 20, 2012) (same).

## C.      Rule 23(c) Notice to Class Members

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (9th Cir. 1998). Rule 23(b)(3) class actions in particular must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Notice of a settlement pursuant to Rule 23(c)(2) is satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.

In addition to the adequacy of the notice, Plaintiffs have also submitted

evidence showing the notice given to the Settlement Class fully and accurately informed the Settlement Class of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice with all applicable requirements. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994). Epiq, the Settlement Administrator, implemented the three-part Notice Program. (ECF No. 64-4 Cameron R. Azari Decl.) Specifically, on February 19, 2019, the Administrator sent 298,226 emails to Settlement Class members for whom Navy Federal maintained email addresses. (*Id.* ¶ 13.) On the same day, the Administrator sent 28,507 postcards to Settlement Class members for whom Navy Federal did not have an email address. (*Id.* ¶ 15.) The mail notice program was completed on March 22, 2019. (*Id.* ¶ 17.) In addition, the Settlement Website, which included a copy of the Long Form Notice and other important filings relating to the Settlement, was established on February 18, 2019. (*Id*. ¶¶ 19–20.) The website had 7,704 visitor sessions with 11,315 pages views as of March 22, 2019. (*Id.* ¶ 21.) The Administrator estimates that approximately 99% of Settlement Class members received individual notice. (*Id.* ¶ 18.) Based on this record, the Court concludes that Plaintiffs complied with the notice schedule for the settlement process approved by the Court.

**D. Rule 23(e)(2) Requirements for Final Approval**

Pursuant to Rule 23(e)(2), "the court may approve [a settlement that would bind class members] only after a hearing and only on finding that it is fair, reasonable, and adequate. . ." Fed. R. Civ. P. 23(e)(2). Both requirements are satisfied here.

**1. Final Approval Hearing**

"The purpose of a fairness hearing is to provide the court with sufficient evidence for it to make an informed decision relating to the fairness of the proposed settlement." *UAW v. Gen. Motors Corp.*, 235 F.R.D. 383, 386 (E.D. Mich. 2006). A fairness hearing need not have all the procedures and protections of a full trial; it is a

forum for interveners to voice their objections and for the fairness of the settlement to be determined, and a court is within its discretion to limit the hearing as necessary to meet those objectives. *Id.* at 386; *see also Tenn. Ass'n of Health Maint. Org., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001). The Court held the Final Approval Hearing on May 20, 2019. No objectors appeared. The parties otherwise addressed the Court's questions regarding the Settlement and Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards. Thus, this Rule 23(e)(2) requirement is satisfied.

### 2. The Settlement's Fairness, Reasonableness, and Adequacy

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc.*, NO. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013). Accordingly, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited." *Officers for Justice*, 688 F.2d at 625.

However limited, before the Court can grant final approval of the Settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the Settlement satisfies this standard, the Court "must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the amount offered in settlement; [4] the extent of discovery completed, and the stage of proceedings; [5] the experience and views of counsel; [6] the presence of a governmental participant; and [7] the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959. "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each

individual case." *Officers for Justice*, 688 F.2d at 625. The Court considered all but the seventh factor in its order granting Plaintiffs' unopposed motion for preliminary approval of the Settlement. Although the Court's previous analysis largely remains the same, the Court restates its key conclusions regarding the Settlement's fairness for the purposes of this final approval order. Because there is no government participant, the Court does not consider the factor. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1, 2011), *supplemented by*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### a. Strength of Plaintiffs' Case

To assess the strength of a plaintiff's case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). "The court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of the litigation.'" *Todd v. STAAR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *3 (C.D. Cal. Oct. 24, 2017) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989)).

As this Court acknowledged in its preliminary approval order, "[t]he strength of Plaintiffs' case is not a foregone conclusion." *Lloyd*, 2018 WL 5247367, at *7. Applying Virginia contract law to address Navy Federal's motion to dismiss, this Court found the following contract language to be sufficiently ambiguous for Plaintiffs' contract claims to proceed beyond the motion to dismiss stage: "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." *Lloyd*, 2018 WL 1757609, at *7. In particular, the Court focused on the ambiguity in the phrase "to cover" and determined that Plaintiffs and Navy Federal offered reasonable interpretations. *Id.* at *7–9. The

Court noted that, faced with similar contract language, the Second Circuit had reversed a district court's dismissal of a breach of contract claim concerning overdraft fees under New York contract law. *See Roberts v. Capital One, N.A.*, 719 Fed. App'x 33 (2d Cir. 2017) (reversing *Roberts v. Capital One, N.A.*, 16 Civ. 4841 (LGS), 2017 WL 1750445 (S.D.N.Y. May 4, 2017)). This Court's decision and the decisions of other federal courts faced with similar contractual language, however, are not the only word on whether plaintiffs, like the Plaintiffs here, may pursue breach of contract claims against financial entities for overdraft fees.

Despite finding that Plaintiffs' contract claims could proceed past the motion to dismiss stage, the Court acknowledged in its preliminary approval order that, "[a]lthough Plaintiffs believe their case has merit, they and Class Counsel recognize that Navy Federal has potentially strong legal and factual grounds available to them for defending this action." *Lloyd*, 2018 WL 5247367, at *7. Indeed, in the time since this Court's dismissal order, another federal district court has determined that the phrase "to cover" is not ambiguous as used in a different defendant's agreement pursuant to Illinois contract law, expressly declining to follow this Court's reasoning in its dismissal order. *See Boone v. MB Fin. Bank, N.A.*, No. 18-cv-1771, —F. Supp. 3d—, 2019 WL 1584553, at *4–5 (N.D. Ill. Apr. 12, 2019) (dismissing breach of contract claim for overdraft fees), *appeal filed, Boone v. MB Fin. Bank, N.A.*, No. 19-1918 (7th Cir. May 13, 2019).[5] Plaintiffs also direct this Court to another case in

_____

[5] The agreement at issue in *Boone* appears to be distinguishable from the Navy Federal agreements at issue here given an "out-of-order payments provision" on which the *Boone* court expressly relied to find the phrase "to cover" not ambiguous. *Boone*, —F. Supp. 3d—, 2019 WL 1584553, at *4. The provision "states that the bank will pay transactions in a given order and warns customers that '[t]he order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented.'" *Id.* No such provision appears in the Navy Federal agreements presented to this Court. (*See* FAC Exs. A, B; ECF No. 9 Ex. 2 Molly Steele Decl. Exs. A, B (declaration submitted in connection with Navy

– 21 –

17cv1280

which a federal district court dismissed claims against a different defendant based on the overdraft fee theory Plaintiffs raised in this case. *See Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 5 (D.D.C. 2016).

Given the questions surrounding the ambiguity of the contractual language and the parties' own concessions, the strength of Plaintiffs' breach of contract claims and related conversion claims sufficient to withstand further litigation is necessarily tempered. The parties have agreed to a settlement with a total financial value of $24.5 million. This settlement is a favorable result, particularly when considering that Plaintiffs might have recovered nothing for the class. Against these considerations, "it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., 09-CV-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). Accordingly, the Court finds that this factor weighs in favor of final approval.

### b. Risk, Expense, Complexity, and Duration of Further Litigation

Plaintiffs contend that the case would likely have entailed significant disputes at each turn. The risk of future motions for summary judgment, for class certification and eventual appeals weighs in favor of settlement at this stage of the proceedings. *See McPhail v. First Command Fin. Plan., Inc*., No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *4 (S.D. Cal. Mar. 30, 2009) (noting that the potential complexity and possible duration of trial weighs in favor of granting final approval, and that post-

---

Federal's motion to dismiss the FAC).) Despite the factual differences between the agreements in this case and in *Boone*, the *Boone* court nevertheless stated it was "declin[ing] to follow the rationale adopted by" this Court. *Boone*,—F. Supp. 3d—, 2019 WL 1584553, at *4.

judgment appeal would require many years to resolve and delay payment to class members). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (Baird, J.) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)). The Court finds that the Settlement is not clearly inadequate and, thus, it is preferable to the uncertainties of further litigation. Accordingly, the Court confirms that this factor weighs in favor of final approval.

### c.     Risk of Maintaining Class Action Status Through Trial

Because the parties reached settlement prior to the filing of a motion for class certification, plaintiffs faced a risk that the class would not be certified. This factor weighs in favor of approving the settlement. *See Chambers*, 214 F. Supp. 3d at 888 ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."); *Gardner v. GC Servs., LP*, No. 10cv0997 - IEG (CAB), 2012 WL 1119534, *4 (S.D. Cal. Apr. 2, 2012) (same). Accordingly, the Court finds that this factor weighs in favor of final approval.

### d.     Amount Offered in Settlement

The Settlement establishes a $24.5 million fund for the Settlement Class's benefit. To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000). As the Court noted in its order granting preliminary approval of the Settlement, Navy Federal estimated that Plaintiffs could have recovered, on a classwide basis, up to $60 million. *Lloyd*, 2018 WL 5247367, at *7. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 455 (2nd Cir. 1974)). Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.* The Court already determined in the preliminary approval order that the $24,500,000.00 Navy Federal has agreed to provide is fair and reasonable. *Lloyd*, 2018 WL 5247367, at *7. The Court's conclusion has not changed. Thus, this factor weighs in favor of final approval.

### e. Extent of Discovery Completed and Stage of Proceedings

"[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. The parties extensively briefed the viability of Plaintiffs' claims—and, in particular, Plaintiffs' breach of contract claim—and the applicable law, followed by informal discovery utilizing an experienced expert, to prepare the Parties for an all-day mediation with the Honorable Walter D. Kelley, Jr. (Ret.) at which they arrived at an agreement to the material terms of the Settlement. As the Court previously concluded, this factor weighs in favor of final approval.

### f. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Wert v. U.S. Bancorp*, No. 13-cv-3130-BAS(AGS), 2017 WL 1807633, at *6 (S.D. Cal. May 5, 2017) (quoting *Boyd v.*

*Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  The Court has already noted that Class Counsel are experienced in class action lawsuits, having led or participated in numerous class-action lawsuits involving financial institutions around the country, with several cases centering on the same overdraft fee theory at issue in this case. *Lloyd*, 2018 WL 5247367, at *8.  Thus, this factor weighs in favor of final approval.

### g.     Reaction of Class Members

The instant motion is the first point at which the Court can address the reaction of class members to the Settlement.  Out of 348,581 Settlement Class Members—none of whom have to submit claims or take any affirmative act to receive relief under the Settlement, only four members have opted-out.  (Azari Decl. ¶ 23; *see also* ECF No. 66 Cameron R. Azari Supp. Decl. ¶ 10.)  This indicates a favorable reaction from class members to the Settlement, which weighs in favor of final approval.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Tellingly, not a single class member has objected to the Settlement.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529.  Accordingly, the Court concludes that this factor weighs in favor of approval.

\*     \*     \*

Having considered the relevant factors, the Court finds that the Settlement is "fair, reasonable, and adequate. . ." Fed. R. Civ. P. 23(e)(2).  Consequently, the Court grants Plaintiffs' unopposed motion for final approval of the Settlement.  (ECF No. 64.)

17cv1280

**ATTORNEYS' FEES, COSTS, & SERVICE AWARDS**

**A.     Requested Attorneys' Fees**

The Settlement Agreement contemplates an award of attorneys' fees and costs to Class Counsel to be paid from the Settlement Fund.  The Settlement Agreement specifically provides that "Navy Federal agrees not to oppose Class Counsel's request for attorneys' fees of up to 35% of the Settlement Fund, and not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses." (Agreement at ¶ 89.)   Given the $24.5 million Settlement Fund, the Settlement Agreement permits Class Counsel to request up to $8,575,000.00 in attorneys' fees. In their attorneys' fee motion, Class Counsel have applied for attorneys' fees in the amount of $6,125,000.00.  (ECF No. 65-1.)  Class Counsel argue at length that the award they seek is warranted here.  (*Id.* at 6–22.)  Having considered the relevant law and the circumstances of this case, the Court approves the requested attorneys' fees.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted); *Adoma*, 913 F. Supp. 3d at 981.  For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton*, 327 F.3d at 963. When state substantive law applies, attorneys' fees are awarded in accordance with state law.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Settlement Agreement provides that it is governed by California law.  (Agreement ¶ 113.)  The Court therefore applies California law to evaluate the reasonableness of the attorneys' fee request.  *See Chambers*, 214 F. Supp. 3d at 894.

In a common fund case, the district court has discretion to use either the percentage-of-the-fund method or the lodestar/multiplier method in calculating an appropriate attorneys' fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942; *Vicaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 687 (Cal. 2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."). Irrespective of which methodology a court uses, the court cannot apply it mechanically or formulaically, but must ensure that the fee award is reasonable. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In contrast with the prospect that Class Counsel might have requested the full $8,575,000.00 in attorneys' fees that the Settlement Agreement authorized Class Counsel to seek without opposition from Navy Federal, the present attorneys' fee request is for $6,125,000.00. The Court is aware that a lodestar cross-check would likely result in a multiplier of around 10.96. (ECF No. 65-1 at 21.) Considering the circumstances of this case, however, the Court finds that percentage-of-the-fund method is appropriate for assessing the reasonableness of the requested attorneys' fees. Given that the overdraft fees at issue in this case amount to $20.00 fees, there was little to no incentive for Class Counsel to litigate this case except on a contingency fee basis on behalf of a class of thousands of Navy Federal members. (ECF No. 65-4J Jeff Ostrow Decl. ¶ 48 (confirming that Class Counsel have contingent fee agreements with Plaintiffs).) Faced with the prospect of potentially no recovery for the class, Class Counsel have obtained a meaningful recovery for the class as a whole. In its discretion, the Court finds that the percentage-of-the-fund method is the preferable method for assessing the reasonableness of the requested

attorneys' fees in this case.

Generally, when applying the percentage-of-the-fund method, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Requests at or below this rate are presumably reasonable. *See Pataky v. Brigantine, Inc.*, No: 3:17-cv-352 GPC (AGS), 2019 WL 183583, at *6 (S.D. Cal. Jan. 14, 2019). In most common fund cases, the award exceeds the 25% benchmark. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) ("[N]early all common fund awards range around 30%."). The present attorneys' fee request amounts to a percentage-of-the-fund recovery at the 25% benchmark when compared to the $24.5 million Settlement Fund.

A district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing Six (6) Mexican Workers, 904 F.2d at 1311). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116–17 (C.D. Cal. 2008). Here, the Court finds that these factors weigh in favor of the 25% benchmark without any need to adjust upward or downward. As Plaintiffs indicate, Class Counsel have secured a meaningful financial benefit for the Settlement Class as a result of this action, even in the face of uncertain outcomes

through further litigation. And, as Class Counsel indicate, the attorneys' fees they seek accords with percentages typical of other litigations involving overdraft fees. (ECF No. 65-1 at 17–18 (collecting cases).) Accordingly, the Court finds the requested amount of attorneys' fees is reasonable and grants Plaintiffs' request.

## B.    Requested Expenses

Rule 23(h) authorizes a court to award fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In addition to the attorneys' fees they request, Class Counsel request an award of $143,038.82 as "costs and expenses reasonably spent during the litigation." (ECF No. 65-1 at 22–23.) Although Class Counsel fail to identify textual basis in the Settlement Agreement for this request in their present motion, the Court reads the Settlement Agreement's authorization permitting Class Counsel to request up to 35% of the Settlement Fund as attorneys' as inclusive of any request for "reasonable costs and expenses." (Agreement ¶ 89; *see also* ECF No. 51-1 at 10 ("Class Counsel are entitled to request, and Navy Federal will not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action." (citing Agreement ¶ 89).)

In their motion, Class Counsel provide an itemized list of the $143,038.82 they request as "costs and expenses reasonably spent during the litigation," including $132,500 for expert fees attributable to Arthur Olsen. (ECF No. 65-4 Jeff Ostrow Decl. Ex. B.) Thus, over 90% of the requested expenses are attributable to Olsen's fees. At the Final Approval Hearing, the Court requested supplemental information regarding these fees. Class Counsel submitted a notice of explanation of total litigation costs and expenses in support of their application for reimbursement of costs. (ECF No. 68.) The notice reflects the following costs: "mediator fees" ($8,616.93), "court fees" ($1,224.00), "travel" ($511.31), "printing and

photocopying" ($157.65), "conference calls" ($28.93), and "expert fee (Arthur Olsen)" ($132,500), for a total expenses amount of $143,038.82. (*Id.* at 2.) The notice also provides a composite of Olsen's invoices, which reflects that $109,100.00 of Olsen's fees are attributable to services he performed after the Court approved Plaintiffs' motion for preliminary approval. (*Compare* ECF No. 54 *with* ECF No. 68 Ex. 1.) The Court cannot find that Class Counsel are entitled to the entire amount of Olsen's expenses for which they seek reimbursement.

The problem for the Court with the request for reimbursement of all of Olsen's expert fees is that—as Plaintiffs clearly indicated in their motion for preliminary approval—Navy Federal had estimated damages for the class at roughly $60 million before the parties engaged in the mediation that led to the Settlement. (ECF No. 51-1 at 17 ("Based on Navy Federal's data analysis prior to mediation, the Parties estimate that the Settlement Class' most likely recoverable damages at trial would have been approximately $60 million."); Joint Decl. ¶ 23 (same).) Olsen submitted a declaration in support of Plaintiffs' motion for final approval of the Settlement, in which he attests that he was "retained by Class Counsel to analyze the class data produced in connection with this action[.]" (ECF No. 64-5 Arthur Olsen Decl. ¶ 2.) As a result of his analysis, Olsen estimates that the class's "total damages" were approximately $57,930,140. (*Id.* ¶ 20.) Plaintiffs cite Olsen's conclusion once in their motion for final approval. (ECF No. 64-1 at 13.) The Court recognizes that Plaintiffs indicated in their preliminary approval papers that "Plaintiffs' expert will calculate the aggregate damages suffered by the Settlement Class under Plaintiffs' theory of liability following Preliminary Approval." (ECF No. 51-1 at 17; Joint Decl. ¶ 23.) Yet, as a matter of awarding funds from the Settlement Fund, the Court cannot find reasonable the $109,100.00 price tag for an exercise that appears to post-date the preliminary approval order, and which merely confirmed what the parties already understood to be the class's potential recovery.

Based on the foregoing, the Court grants in part and denies in part Plaintiffs' motion for reimbursement of expenses. (ECF No. 65-1 at 22–23.) The Court approves reimbursement from the Settlement Fund of expenses in the amount of $33,938.82, which includes an award of $23,400.00 in fees for Olsen's work performed prior to the Court's preliminary approval order as reflected in his invoices.

## C.     Service Awards to Class Plaintiffs

Finally, the Settlement Agreement provides that the Class Representatives will receive $5,000.00 each, for a total of $10,000.00 to be paid from the Settlement Fund. (Agreement ¶ 93.) "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[ ]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The $5,000.00 incentive award for each Class Plaintiff in this case is presumptively reasonable. *See Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013); *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009). Accordingly, the Court finds that the service awards to the Class Plaintiffs are appropriate.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiffs' unopposed motion for final approval of the Settlement. (ECF No. 64.) The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' unopposed motion for approval of their counsels' application for attorneys' fees, reimbursement of expenses, and service awards. (ECF No. 65.) The Court **ORDERS** as follows:

1.      For the purposes of this Settlement only, the Court has jurisdiction over

the subject matter of the Complaint and personal jurisdiction over the Parties and the Settlement Class.

2.    Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), and based on findings made in the Preliminary Approval Order, the Court certifies, solely for purposes of effectuating this Settlement, the following Settlement Class:

> All current and former Navy Federal members who were charged an OOPS Fee on a transaction that was authorized into a positive available balance during the Class Period, excluding individuals who enrolled in OOPS for the first time after February 13, 2017.

Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who timely elected to be excluded, and all judges assigned to this litigation and their immediate family members.

3.    Notwithstanding the certification of the foregoing Settlement Class for purposes of effecting the Settlement, if this Final Approval Order is reversed on appeal or the Settlement is terminated or is not consummated for any reason, the foregoing certification of the Settlement Class shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Final Approval Order without prejudice to any legal argument that any of the parties to the Settlement might have asserted but for the Settlement.

4.    The following individuals have timely opted-out of the Settlement and are therefore not bound by the Settlement, Releases, Final Approval Order or Final Judgment: Yvonne M. Bonds, Marcille R. Cannady, Mary Fanara, and Margaret Landreville.

5.    The Court **CONFIRMS** Plaintiffs Jenna Lloyd and Jamie Plemons as

Class Plaintiffs.

6. The Court **CONFIRMS** Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow P.A., Hassan Zavareei and Andrea R. Gold of Tycko & Zavareei, LLP, and Taras Kick of The Kick Law Firm, APC as Class Counsel.

7. The Court **CONFIRMS** Epiq as the Settlement Administrator.

8. The Court finds the Notice completed satisfies due process requirements and the requirements of Rule 23(c)(2), is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Class members.

9. The Court finds Defendant has complied with the notice provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Navy Federal properly and timely notified the appropriate government officials of the Settlement, pursuant to CAFA. The Court has reviewed the substance of Navy Federal's notice and finds that it complied with all applicable requirements of CAFA. Further, more than ninety (90) days have elapsed since Navy Federal provided notice pursuant to CAFA and the Final Approval Hearing

10. The Court **APPROVES** the Settlement Agreement and the terms and conditions of the Settlement set forth therein, subject to any modifications by the Court in the preliminary approval order.

11. The Court **GRANTS** the request to approve each Class Plaintiff's $5,000.00 service award, to be paid from the Settlement Fund as provided for by the Agreement.

12. The Court **GRANTS** the request to award Class Counsel $6,125,000.00 in attorneys' fees and costs and expenses of $33,938.82, to be paid from the Settlement Fund as provided for by the Agreement.

13. The Court **ORDERS** the Parties to the Agreement to perform their obligations thereunder pursuant to the terms of the Agreement. Navy Federal is ordered to pay the Settlement Fund and Settlement Administration Costs consistent with the terms of the Agreement. Provided it is economically feasible, should any

funds remain after the initial distribution, the Parties shall do a second distribution *pro rata* to those who received Settlement Class Member Payments.  If residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties, subject to the Court's approval, shall distribute the remaining funds, if any, to a *cy pres* recipient that works to promote financial literacy, including for military members or veterans.

14. The Court **ADJUDGES** that the Plaintiffs and all Settlement Class Members shall be bound by this Final Approval Order.

15. Upon the Effective Date, Plaintiffs and each Settlement Class Member, shall, by operation of this Final Approval Order, be deemed to have released all Released Parties in accordance with paragraphs 84–88 of the Agreement.  Plaintiffs and each Settlement Class Member shall also be barred and permanently enjoined from bringing on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any of the Released Claims against Navy Federal in any forum, action, or proceeding of any kind.

16. This Final Approval Order is not a finding or determination of any wrongdoing by Navy Federal, which maintains that its conduct complied at all times with applicable laws and regulations and the terms of its account agreements with its members.  The Final Approval Order likewise is not a finding or determination of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the Action.  This Final Approval Order, the Settlement or any such communications shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement, this Final Approval Order and the Judgment to be entered hereon may be filed in any action by Navy Federal or Settlement Class Members seeking to enforce the Settlement or the Judgment by injunctive or other relief, or to assert defenses

including, but not limited to, res judicata, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim

17.     The Court **DISMISSES WITH PREJUDICE** the Action and all Released Claims.   These dismissals are without costs to any party, except as specifically provided in the Agreement.  The Settlement shall be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of the Plaintiffs, Settlement Class Members, and Releasing Parties.

18.     Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over: (a) implementation and enforcement of the Agreement pursuant to further order of the Court until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the Parties shall have been performed pursuant to the Agreement; (b) any other action necessary to conclude this Settlement and to implement the terms of the Agreement; and (c) the construction and interpretation of the Agreement.

19.     Pursuant to Rule 58, the Clerk of the Court **SHALL ENTER FINAL JUDGMENT** based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Final Judgment.

20.     The Clerk of the Court shall close the file in this case.

**IT IS SO ORDERED.**

**DATED:  May 28, 2019**

Hon. Cynthia Bashant
United States District Judge